## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

**IN THE MATTER OF:**

**Stanley Crawford,**

          **Debtor.**

| | | |
|---|---|---|
| **STANLEY CRAWFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Adversary Proceeding:** |
| | ) | **12-3033** |
| | ) | |
| **LVNV FUNDING, LLC, ET AL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS PRA RECEIVABLES MANAGEMENT, LLC, LVNV FUNDING, LLC AND RESURGENT CAPITAL SERVICES, LP'S MEMORANDUM BRIEF REGARDING THE REMAND OF THIS CASE FROM THE 11TH CIRCUIT

COME NOW, Defendants LVNV Funding, LLC, ("LVNV") Resurgent Capital Services, LP ("Resurgent"), and PRA Receivables Management, LLC[1] as agent of Portfolio Recovery Associates, LLC ("PRA") (collectively "Defendants"), by and through counsel of record, and submit this Memorandum Brief. At the last two hearings in this case, it was discussed what, if any, issues were left to resolve in the wake of the 11th Circuit's decision and subsequent remand. This Honorable Court has requested each party brief their respective positions. Based on the issue on appeal, the controlling case law, and substance of the 11th Circuit's Order, the entirety of case has been remanded for further proceedings, including

---

[1] Resurgent transferred the Proof of Claim ("POC") to PRA. In other words, PRA did not file the POC in question.

discovery, summary judgment and, if needed, trial. As support, Defendants show unto this Court as follows:

## SUMMARY OF ARGUMENT

It cannot be disputed the Eleventh Circuit's Order sent this case back on "remand for further proceedings." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1262 (2014). It was not reversed and rendered; the appellate court did not render a ruling on the ultimate merits of this case. There was only one issue on appeal and it concerned the correctness of the decision to dismiss this case for failure to state a claim. In perhaps the only thing Plaintiff and Defendants have agreed on, both parties framed the issue on appeal to address simply this limited question. The Eleventh Circuit ruled on the issue before it, but only on the issue before it: whether Plaintiff's alleged Fair Debt Collection Practices Act violation - one based only on the filing of a proof of claim - was sufficient to meet the viability standard of Federal Rule of Civil Procedure 12(b)(6).

To answer this question, the appellate court had to credit each allegation in the complaint and allow Crawford the benefit of all legal and factual inferences. The court did so, giving every possible consideration to the non-moving party. This is evident throughout the opinion as the 11th Circuit presumes numerous issues – some of which may be dispositive of the claim upon remand – in Crawford's favor. Having done so, the appellate court delivered a mandate that such allegations create, at least, a theoretically viable claim. Because the appellate court's mandate does not include a ruling on the ultimate merits of Plaintiff's claim, this Honorable Court must now address them. Even if this Honorable Court, however, believed the *Crawford* opinion impliedly addressed the merits of the case, this Court is still not barred from reconsidering those issues on remand under these circumstances. The merits of this case remain undecided.

# STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.      This Honorable Court knows the facts of this case intimately, but for the record the procedural history is again set forth.  Plaintiff filed for Chapter 13 bankruptcy on February 2, 2008. *See* Plaintiff's Chapter 13 Bankruptcy Dkt., Doc. 1.

2.      On May 21, 2008, Resurgent, acting as agent of LVNV, filed Proof of Claim 8 ("POC"). *See* Claims Registry Entry 8-1.  This Proof of Claim was later transferred to PRA.

3.      On May 3, 2012, Plaintiff filed an adversary proceeding against Defendants alleging that filing a proof of claim on a time-barred debt is a violation of the Fair Debt Collections Practices Act (hereinafter "FDCPA") 15 U.S.C. §1692. *See* Adversary Proceeding Docket Sheet.

4.      On July 12, 2012, this Honorable Court dismissed Plaintiff's adversary proceeding for failing to state a cause of action. *See* July 12, 2012 Order by the Honorable Dwight H. Williams, Jr.

5.      Plaintiff appealed, but the District Court affirmed the decision of this Honorable Court on May 10, 2013. *See* Adversary Proceeding Docket Sheet.

6.      Once again Plaintiff appealed and the Eleventh Circuit reversed and remanded the decisions of the lower courts on July 10, 2014. Defendants filed a petition for rehearing *en banc*, but the Eleventh Circuit denied the petition. As such, an Order was entered on October 20, 2014 to remand this case to this Honorable Court. *See* Adversary Proceeding Docket Sheet.

7.      The Eleventh Circuit's decision is the subject of a pending petition for *Writ of Certiorari*.  Because of the risk that a ruling in favor of either party may inadvertently deprive the Supreme Court of the United States of jurisdiction to hear the *Crawford* appeal, this Honorable Court has agreed to table a ruling on the merits of this case until after the petition has either been accepted or denied.

## ARGUMENT

**A. The *Crawford* opinion is not a ruling on the merits, but a determination by the Court that Plaintiff's FDCPA claim is sufficient to meet the viability standard of Federal Rule of Civil Procedure 12(b)(6).**

It is important to remember this case went up on appeal in regards to the Defendants' Motion to Dismiss. Thus, the only issue before the Eleventh Circuit was the legal basis for Defendants' Motion to Dismiss per Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. (12)(b)(6); *see also* Fed. R. Bankr. P. 7012(b). Why does this matter? Because the 12(b)(6) standard "is designed to streamline litigation by dispensing with needless discovery and fact finding [such that] a court may dismiss a claim based on a dispositive issue of law without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Under the 12(b)(6) standard, the Court accepts "allegations in the complaint as true and [construes] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Consequently, the threshold for any plaintiff to overcome a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

Despite the ease with which a motion to dismiss can be overcome, Plaintiff failed to clear that hurdle before this Honorable Court and again before the Honorable Judge Keith Watkins. This is in no small part due to the fact that Plaintiff admitted he could not win his appeal without a change in the law. *See* Memorandum of Opinion Chief Judge Keith Watkins at page 3. The District Court was disinclined to evoke such a change. Undaunted, Crawford then asked the 11th Circuit to review the two Orders dismissing his case. That meant the Eleventh Circuit was asked to determine one simple question: whether Plaintiff's claim was enough to survive a 12(b)(6) challenge.

Tellingly, Plaintiff framed the issue to the Eleventh Circuit as "[d]id the Bankruptcy Court err in holding as a matter of law that debt collectors do not violate the Fair Debt Collection Practices Act [] when they act to collect on a time-barred claim in bankruptcy?" *See* Plaintiff's Brief to the Eleventh Circuit page 1. Plaintiff was not asking the appellate court, nor could he, to rule Defendants were <u>liable</u> as a matter of law. To the contrary, the question was whether his alleged claim could <u>ever be viable</u>. For all of the same reasons, Defendants similarly put the issue to the Eleventh Circuit as "[d]id the United States Bankruptcy Court for the Middle District of Alabama [] err in dismissing Stanley Crawford's [] Adversary Proceeding which was based solely on [Defendant's] filing of a proof of claim for a time-barred debt[?]" *See* Defendants' Brief to the Eleventh Circuit page 1. Therefore, the issue on appeal according to <u>both</u> Plaintiff and Defendants was merely whether Plaintiff's allegations were sufficient to defeat Defendants' Motion to Dismiss. In other words, before the Eleventh Circuit was the narrowly tailored question of whether Plaintiff's claim can survive Defendant's 12(b)(6) motion and <u>not</u> questions regarding the ultimate merits of Plaintiff's case. Otherwise there would be no need for footnote 1 in *Crawford v. LVNV Funding, LLC* wherein the Eleventh Circuit explained "LVNV's motion to dismiss Crawford's adversary proceeding is governed by Federal Rule of Civil Procedure 12(b)(6)." 758 F.3d 1254, 1262 n.1 (11th Cir. 2014). That is a reason why the case was remanded, not rendered.

Although the Eleventh Circuit held Plaintiff alleged sufficient facts to overcome Defendant's 12(b)(6) motion, Plaintiff's counsel contends the Eleventh Circuit also decided all substantive issues and defenses (even though an answer listing defenses had not yet been filed at that time) in the case. This is simply untrue. Moreover, interpreting the *Crawford* opinion in the manner urged by Plaintiff would be contrary to existing law. It is well-established that when a

court is presented with a motion to dismiss under 12(b)(6), the court is tasked with determining exclusively the sufficiency of the complaint and <u>not</u> tasked with deciding the merits of the case. *Wein v. American Huts, Inc.*, 313 F.Supp.2d 1356, 1359 (S.D. Fla. 2004) (citing *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir. 1984)); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (explaining "[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits"); *Moore v. McCalla Raymer, LLC*, 916 F.Supp.2d 1332, 1342 (N.D. Ga. 2013) (stating a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case."); *Harold v. Barnhart*, 450 F.Supp.2d 544, 551 (E.D. Penn. 2006) (stating "[t]he purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case"); *Federal Exp. Corp. v. U.S. Postal Serv.*, 75 F.Supp.2d 807, 810 (W.D. Tenn. 1999) (exclaiming "[t]he purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the formal sufficiency of the claim and not to resolve the facts of the merits of the case); *White v. Continental General Ins. Co.*, 831 F.Supp. 1545, 1561 (D. Wyo. 1993) (explaining "[a] motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the plaintiff's allegations; it is not a procedure for resolving issues of fact or evaluating the merits of a case"); *Mullis v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 492 F.Supp. 1345, 1349 (D. Nev. 1980) (stating that it is not proper to decide merits in the sense of factual allegations on a motion to dismiss for failure to state a claim").

The Eleventh Circuit knows this standard and understood the issue on appeal. The *Crawford* court ended the opinion by stating "we vacate the district court's dismissal of Crawford's complaint and *remand for further proceedings*." *Crawford*, 758 F.3d at 1262 (emphasis added); *see generally Hishon v. King & Spalding*, 467 U.S. 69, 79 (1984) (reversing

the lower court's decision of dismissing plaintiff's case and remanding it back to the lower court for further proceedings because "[p]etitioner [] is entitled to her day in court to prove her allegations"). Likewise, the Eleventh Circuit remanded this case back to this Honorable Court because Plaintiff is entitled to his day in court to prove his allegations <u>and Defendants are entitled to their day in court to dispute the allegations</u>. As such, there are several merit based issues in this matter, none of which have been decided, that will ultimately determine the outcome of this (and similar) cases. For instance, the *Crawford* court specifically stated that it was not ruling on the preemption and displacement issue. *Crawford*, 758 F.3d at 1262 n.7. The Eleventh Circuit could not more explicitly tell the lower court that issues remain unresolved.

The purpose of rule 12(b)(6) is to streamline the litigation process in cases where it is clear as a matter of law "that no relief can be granted under *any* set of facts that can be proved consistent with the allegations." *Neitzke*, 490 U.S. at 327 (citing *Hishon*, 467 U.S. at 73) (emphasis added). Therefore, in *Crawford* the Eleventh Circuit had to determine if there were *any* set of facts that would substantiate Plaintiff's cause of action. To do this, the Eleventh Circuit "accept[ed] as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1535 (11th Cir. 1994); *see also St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (stating for a motion to dismiss the court "accept[s] the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor"); *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 623 (N.D. Ala. 2013) (explaining that "all 'reasonable inferences' are drawn in favor of the plaintiff" under a motion to dismiss). Under the 12(b)(6) standard of review, the *Crawford* court had to determine the sufficiency of Plaintiff's complaint and resolve all question in the light most favorable to Plaintiff. *Cobb v. Marshall*, 481 F.Supp.2d 1248, 1253 (M.D. Ala. 2007). In other words, if a

particular fact or question could be determined in more than one way, the court was obligated to determine it in favor of Crawford.

And that is precisely what the Eleventh Circuit did. The consequence, however, is that Plaintiff now misconstrues the favorable inferences in the *Crawford* opinion as a mandate to this Court such that all facts and legal issues have been permanently resolved and there is nothing left to do but award damages. Crawford does not understand why the language in the order was written in seeming absolutes. The Order <u>had</u> to resolve any questionable issue – such as whether the Least Sophisticated Consumer Standard or the more stringent 'Competent Counsel' standard would apply – in his favor. This example regarding the Least Sophisticated Consumer Standard, among other examples to be detailed later in this brief, was unquestionably *not* before the 11th Circuit on appeal. Yet the court wrote to it nonetheless, and presumed the more forgiving standard would apply, because such is the theoretical framework in which Crawford's claim finds viability. Of course it remains undetermined if a debtor in bankruptcy, guarded by a lawyer, a trustee, and the rules of bankruptcy procedure, truly fits the category of those designed to be protected by the FDCPA's Least Sophisticated Consumer standard. But the appellate court has to pretend it would apply for purposes of testing the complaint against Rule 12(b)(6). The appellate court applied the LSC standard to show circumstances under which there can be a theoretical viability to Crawford's claim. The appellate court found the LSC standard <u>could</u> apply; now this court must determine if, under the facts and circumstances of this case, it does.

Similarly, another issue that needs to be determined on remand is whether a bankruptcy estate is deemed a natural person. This is a very important part of the case, as the FDCPA only

applies to efforts to collect debts owed by "natural person[s]."[2] There are compelling legal and logical reasons to believe a bankruptcy estate is not a 'natural person' and, if it is not, there can be no FDCPA violation. Consider the following: when a debtor files bankruptcy, per 11 U.S.C. § 541(a), an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Importantly, "the debtor and the bankruptcy estate are distinct entities in an individual's bankruptcy proceeding." *Katz v. C.I.R.*, 335 F.3d 1121, 1127 (10th Cir. 2003). The Supreme Court has long understood a proof of claim asserts a right to payment not against the debtor but "against the debtor's estate." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). That is why courts keep finding "[t]he filing of a proof of claim is a request to participate in the distribution of the bankruptcy estate under court control. It is not an effort to collect a debt from the debtor . . . ." *In re McMillen*, 440 B.R. 907, 912 (N.D. Ga. Nov. 15, 2010).

Again, this specific issue was not before the appellate court. However, the court was obligated to infer - in favor of the plaintiff – that the estate could be a natural person. The Plaintiff received the beneficial assumption (at the 12(b)(6) stage) that a bankruptcy estate can be the kind of "natural person" Congress wanted to protect when it wrote the FDCPA. Having done so, the appellate court next inferred that asking to participate in the distribution of a bankruptcy estate is an attempt to collect an obligation of a natural person such that the FDCPA can apply. These favorable inferences do not decide the issue. The parties never even had a chance to brief them. But if these issues ultimately were to go Crawford's way, his complaint has conceptual viability such that it cannot be dismissed at this stage. That is the sum total of the *Crawford*

---

[2] Per the FDCPA, the term "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 USC § 1692a(3).

opinion and should not be extended to decide matters not presented by the appeal. Judgment on the pleadings, summary judgment, and trial are all options both parties may exercise on remand.

The rules governing the scope of review on a 12(b)(6) motion do not limit the appellate court's consideration to the viability of the complaint by accident. There are important and valid reasons why the merits of the case are not addressed at the motion to dismiss stage. Otherwise, a party filing a Motion to Dismiss would run the risk of having the entire controversy decided against it before even filing an answer. A motion designed to test whether the <u>complaint</u> is legally viable would have inadvertently, and improperly, become a mechanism to decide the entire case or controversy <u>against the Defendant</u> without the Defendant (or even the plaintiff) having 'his day in court.' That is precisely the opposite of what a Motion to Dismiss is supposed to be. The parties to this case both framed the issue on appeal in the same way: was it a mistake for this Honorable Court to dismiss the complaint for failure to state a claim? It is only now that Crawford tries to argue the entire case was before the Eleventh Circuit. The facts show the opposite, and the case law controlling this matter both while on appeal and now upon remand dictate that the merits of this controversy must now be addressed.

The appellate court plainly left open the issue of whether the bankruptcy code displaces or even preempts the FDCPA when it comes to a debt collector filing a proof of claim. *See Crawford*, 758 F.3d at 1262 n.7. Crawford cannot, in good conscious, argue the Order does not state this explicitly. If nothing else, that issue must be addressed by this Honorable Court before any final adjudication. But that is hardly the only issue left to consider. As pointed out, Crawford must still explain how and why a bankrupt debtor should be afforded the standing of the least sophisticated of consumer when the allegedly misleading communication was delivered

to a court, reviewed by a legally trained trustee, and when the debtor himself had counsel. Reasoned case law says a different standard should apply.

Defendants anticipate Plaintiff emphasizing certain portions of the Eleventh Circuit's opinion as support for his claim that the Eleventh Circuit decided the LSC standard indisputably applies in this case as well as any other case involving the filing of a POC by a debt collector. However, looking at the Eleventh Circuit's statements and the cases it relied on, such a contention would be incorrect. The Eleventh Circuit stated: "[t]he FDCPA's broad language, our precedent, and the record compel the conclusion that defendants' conduct violated a number of the Act's protective provisions"; and "[f]or all of these reasons, under the 'least-sophisticated consumer standard' in our binding precedent, LVNV's filing of a time-barred proof of claim against Crawford in bankruptcy was 'unfair,' 'unconscionable,' 'deceptive,' and 'misleading' within the broad scope of § 1692e and § 1692f." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257, 1261 (11th Cir. 2014). The critical part of this language – never acknowledge by claimants – is to understand what "The record is and what precedent would therefore be binding."

First, by the Eleventh Circuit stating that "the record" is one of the factors compelling it to its conclusion, it is explaining that the facts of the case are an important and necessary aspect of determining whether an FDCPA violation exists. The Eleventh Circuit was applying statutory and case law to "the record" which is nothing more than the facts presented on appeal. To the extent the Eleventh Circuit was creating new precedent, it was only doing so as expressly provided; i.e., determining the applicability of prior precedent to "the record." If the record on appeal is not ultimately the same as the record following the close of discourse, the precedential effect of the Panel's ruling would no longer exist. And, naturally, we know "the record" after

discovery will be different than "the record" on appeal. This was, after all, an appeal of a motion to dismiss.

Second, "the record" compelling the Eleventh Circuit to its conclusion is the Complaint being viewed in the light most favorable to the Plaintiff. There is no other record to speak of because the appeal was from a Rule 12(b)(6) motion filed before a record could be established. Thus, "the record" is not the actual facts of the case, but rather the best possible scenario for the Plaintiff. In this case, the best possible scenario is one where the POC was sent to, received, and actually viewed by the Plaintiff. There is nothing in "the record" to confirm or deny whether this was actually the case, although it is not likely an accurate representation of the facts given the structure of Chapter 13 bankruptcy. Nevertheless, because the Eleventh Circuit was obligated to assume for purposes of the appeal that the POC was directly communicated to Plaintiff (i.e., without court, attorney, or trustee intervention), it is not surprising that it applied the LSC standard. Like the Eleventh Circuit said, under a scenario in which a communication is made directly to the debtor, there is binding precedent stating the LSC standard applies. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985).

However, on appeal the Eleventh Circuit did not address the proper standard for when a communication is not made directly to the debtor, as will likely be the case when Defendants are able to develop the record. Likewise, the cases cited by the appellate court, which they claim to be binding, do not address the applicable standard for when communications are not made directly to a debtor but, rather, only reach the debtor after passing through a learned intermediary. *See id.* The Eleventh Circuit stated it was relying on "the record" and "binding precedent" in applying the LSC standard to the case, but there was no true record or binding

precedent addressing likely scenarios outside the one assumed by the appellate court. The Eleventh Circuit was right to make these favorable assumptions, but decision to apply the LSC standard was limited only to those assumptions; i.e., when the POC is directly communicated to Plaintiff. Accordingly, the Eleventh Circuit's opinion regarding the LSC standard is not binding on this Court on remand. This Honorable Court will have to review the factual record yet to be developed and then determine the rules and standards to apply.

Moreover, can a bankruptcy estate, one that is legislatively created and distinct from the debtor himself, be a 'natural person' per the FDCPA? Regardless of the answers to those questions, can the debtor honestly claim to have been misled by any proof of claim - even under the least sophisticated consumer standard - when one realizes that bankruptcy is a voluntary process initiated by the debtor himself, wherein he invites anybody with a claim to file it? Can Crawford, as a matter of law, convince this court he was misled by a proof of claim for a debt originating from Heilig Meyers when that creditor is listed in his matrix? And none of these considerations touch on the fact that his claim is barred by the statute of limitations. That matter is separately briefed and is a defense that is not waived by the filing of a Motion to Dismiss.

This case was remanded for further proceedings. There is much yet to process.

**B. The "law of the case" in *Crawford* extends only to the issue that was presented for appeal; there is no mandate upon remand other than it was error to dismiss the case at the Rule 12(b)(6) level.**

"Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (hereinafter "*Transamerica*") (quoting *Heathcoat v. Potts*, 905

F.2d 367, 370 (11th Cir. 1990)). The mandate rule "is nothing more than a specific application of the 'law of the case' doctrine." *Transamerica*, 430 F.3d at 1331 (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985)). The purpose of this doctrine includes "(1) insuring that litigation on an issue will come to an end, (2) discouraging 'panel shopping' at the circuit court level, and (3) assuring the obedience of lower courts to the decisions of appellate courts." *Heathcoat*, 905 F.2d at 370. Based on the *Crawford* opinion, the mandate, or law of the case, for this Honorable Court is that the FDCPA can be applied to filings of the POC in bankruptcy proceedings. Therefore, the trial court is bound to follow the appellate court's expressed and implied holdings. *Transamerica*, 430 F.3d at 1331.

However, "the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal" because considering ancillary issues not before the appellate court imposes unnecessary and burdensome duties on the court. *Id.*; *see also Ne. Fla. Chapter of the Associated Gen. Contractors of Am. V. City of Jacksonville*, 951 F.2d 1217, 1218 n. 1 (11th Cir. 1992) (explaining "the panel was not prohibited by the law of the case doctrine from dismissing a case based on lack of standing where the prior appellate panel had not considered the standing question"); *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1568-69 (11th Cir. 1985)("noting that prior appellate decisions, which discussed only the merits of several desegregation plans, did not prevent the court from later addressing the district court's prior rulings regarding attorneys' fees"); *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir. Unit A May 1981) ("affirming the trial court's grant of a new trial on grounds that, at the time of prior appeals, had not yet been considered by the district court, and therefore were not ruled upon by prior appellate panels").

At each hearing in this case upon remand, Crawford has taken the position that the Eleventh Circuit has ruled either explicitly or implicitly in his favor on each and every substantive matter the case can present, regardless of the fact that he framed the issue on appeal to a narrow consideration. Crawford contends the appellate court must have found his estate was a natural person, for example, because otherwise there would be no reason to find even theoretical viability. If the estate is not a natural person, the case would be over. Therefore, because the case was not dismissed on this basis (despite the fact it was not the issue on appeal) the court must have impliedly determined it in his favor. This thinking is flawed and was specifically debunked by the 11th Circuit Court of Appeals in the matter of *Transamerica Leasing, Inc. v Institute of London Underwriters,* 430 F.3d 1326 (2005).

In pertinent part, Transamerica Leasing brought suit against Institute of London Underwriters ("Underwriters") to recover payment for lost cargo vessels Underwriters insured. *Transamerica Leasing, Inc.*, 430 F.3d at 1329. More specifically, Transamerica had leased these vessels to a Venezuelan governmental shipping line called CAVN. *Id.* The lease required CAVN to insure the equipment, which it did via a policy purchased from Underwriters. *Id.* Unfortunately, CAVN ended up losing massive amounts of Transamerica's equipment under circumstances best described as suspicious but perhaps more accurately described as fraudulent. CAVN went bankrupt, Transamerica filed claims for reimbursement with Underwriters, and Underwriters denied all claims due to the circumstances surround CAVN's conduct. *Id.* at 1329-1330.

To trigger coverage, Transamerica argued it was an 'additional assured' under the policy. *Id.* at 1330. Underwriters argued it was merely a loss payee. *Id.* Transamerica was granted summary judgment on its position but Underwriters appealed. *Id.* The appellate court found

factual issues existed regarding Transamerica's status under the policy. *Id.* Per the reasoning of the Eleventh Circuit, if Transamerica was an additional assured (or both an additional assure <u>and</u> a loss payee), Transamerica would be entitled to coverage. *Id.* However, if Transamerica was <u>only</u> a loss payee, Transamerica may not have coverage if CAVN failed to disclose material facts to Underwriters when the policy was purchased. *Id.* at 1330, 1332.

On remand, the jury found Transamerica was a loss payee, but must have also found CAVN satisfied its disclosure obligations to Underwriters because it awarded Transamerica $783,226.00 plus interest. *Id.* at 1330. At this point, however, Underwriters had a surprise for Transamerica: under English law (the controlling law of the case) a loss payee has no standing to sue for breach of contract. *Id.* The USDC granted Underwriters motion for judgment as a matter of law, and Transamerica appealed. *Id.*

Here is where *Transamerica* takes on special significance to our case. The case had already been up on appeal regarding whether Transamerica was a loss payee or additional assured. When sending the case back down, the Eleventh Circuit found the jury must determine that issue and then, if Transamerica were found to be a loss payee, the jury must next determine if CAVN's alleged misrepresentations voided coverage. Transamerica found this last instruction to be of vital importance because – if a loss payee had no standing to sue in the first place – the appellate court's instruction that the jury must consider the effect of CAVN's misrepresentations on coverage would make no sense. Therefore, argued Transamerica, the matter of standing was necessarily decided by the appellate court by implication. As the court of appeals explained:

> Transamerica nevertheless urges that we must have implicitly ruled upon standing in our prior opinion because the mandate in that case instructed the jury to determine Transamerica's status and, if its status was that of a loss payee, to then determine whether CAVN's alleged misrepresentations served to void the policy. Consideration whether CAVN's actions voided the contract would have been entirely unnecessary, Transamerica argues, if a loss

payee had no standing to sue in the first place. Thus, the argument goes, we must have implicitly decided that a loss payee has standing to bring a claim.

*Id.* at 1332. This is precisely what Crawford will argue: that the issue of (for example) whether a bankruptcy estate is a natural person must have been decided by the Eleventh Circuit, for if the estate is not a natural person, then the FDCPA claim will fail and consideration of whether the claim has theoretical viability 'would have been entirely unnecessary.'

Is this line of reasoning correct? No. The Eleventh Circuit re-articulated to Transamerica that the law of the case doctrine would apply "*only* if our prior opinion determined, explicitly or by necessary implication, that a loss payee has standing to sue. First, we easily conclude that our prior decision never explicitly determined the issue. Underwriters did not raise the issue in their appellate briefs, and we did not consider it in our ruling." *Id.* at 1332 (emphasis in original). The court made similarly quick work of the contention that the standing issue was an necessary implication of its prior ruling, going so far as to note "had either party attempted to address standing in the prior appeal, we undoubtedly would have declined to reach the issue precisely because it was not addressed by the district court." *Id.*

In other words, because the district court did not address standing as a basis of its summary judgment order, the matter was never before the Eleventh Circuit and, accordingly, could not be part of their consideration, explicitly or implicitly. Transamerica's argument to the contrary "[q]uite simply . . . must fail because the issue of whether a loss payee has standing to sue under an insurance policy interpreted under the law of The United Kingdom was never before this Court during the prior appeal." *Id.* It was an easy call for the appellate court because "our case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal." *Id.*

Case 12-03033   Doc 49   Filed 02/13/15   Entered 02/13/15 17:46:14   Desc Main
Document   Page 17 of 24

So what was the scope of the prior appeal in this case?  What was the issue addressed by the district court that prompted the appeal?  The district court considered only whether the complaint could survive FRCP 12(b)(6).  Moreover, when the parties framed the issue for the Eleventh Circuit, both asked simply if, as a matter of law, it was error to dismiss the complaint. By answering that question, the court of appeals no more ruled on all other underlying matters than it did in *Transamerica*.  In one regard, Transamerica had a point: if a loss payee could never prevail, why would the appellate court remand the case for a consideration of whether the insured's lies would impact the loss payee's right to recover?  Similarly, if a bankruptcy estate is not a natural person, why remand the case for further proceedings?  The answer is the same in both:  because the matter was never before the appellate court to begin with.  The court in *Crawford* answered the one question it was asked:  did the district court err, as a matter of law, in holding a debt collector never violates the FDCPA when filing a proof of claim on a time-barred debt.  While the Defendants believe the panel got the answer wrong, it doesn't change the nature of the question they were asked.

Crawford urges this court to make the same mistake as the plaintiff in *Transamerica*, i.e., to assume any possible issue that would allow his claim to survive has been ruled upon by implication.  To do so, Crawford must convince this court first to ignore how he framed the issue on appeal, and then to ignore the compelling rationale – not to mention the binding nature – of Eleventh Circuit precedent like *Transamerica*. Defendants in this matter did *not* present to the district court the 'natural person' issue, or the LSC standard, or preemption, or estoppel, or the statute of limitations, among other issues. Instead, the issue presented to the district court, and ultimately appealed, was whether the lower court erred in granting Defendants' motion to dismiss under 12(b)(6). The court of appeals applied the "exceedingly low" standard under

12(b)(6), accepted Plaintiff's allegations as true, and made all inferences in Plaintiff's favor to reverse the lower court's decision. *See Jackson*, 21 F.3d at 1535. Those inferences were not rulings by implication.

Moreover, arguing that the Eleventh Circuit made implicit or explicit rulings on issues not before it is the same as arguing the law of the case doctrine can be applied to issues outside the scope of the prior appeal. This completely contradicts this jurisdiction's binding precedent explaining "[o]ur case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal." *Transamerica*, 430 F.3d at 1331. Plaintiff is seduced by the language in the opinion but fails to recognize the court's treatment of (for example) the LSC standard and 'natural person' issues are the "mere recital of matters assumed for purposes of decision and dicta [and] are not part of the mandate." 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.3 at 733 (2d ed. 2002); *see Snow-Erlin v. U.S.*, 470 F.3d 804, 807-08 (9th Cir. 2006)(noting that the first appeal addressed solely a statute-of-limitations question, hence, plaintiff's negligence claim had not been addressed by the appellate court, so the mandate did not prevent the district court from entering a ruling); *Jones v. Lewis*, 957 F.2d 260, 262-63 (6th Cir. 1992) (explaining that even though the appellate court's opinion recited facts as gleaned from the record below that the police officer entered the house without consent, the court of appeals did not actually make a disposition on this issue that was binding on remand as part of a mandate); *see also Adams v. U.S.*, 255 F.3d 787, 796-97 (9th Cir. 2001) (stating the appellate court's misstatement of the fact in its opinion in no way gave additional property to the plaintiff because the court of appeals faced no factual issue, so the misstatement of fact did not bind the lower court on remand); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 531-34 (7th Cir. 1982) (noting "observations,

commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations"); *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904-05 (7th Cir. 2007) (explaining reversing the lower court's decision to dismiss a case for failing to state a claim only established that the plaintiff pleaded enough to justify discovery to determine whether plaintiff could prove sufficient facts to support his allegations, but it did not prevent summary judgment for the defendant when the plaintiff could not establish a genuine issue of material fact).

Moreover, imposing on the appellate court "the necessity of considering many arguments not yet considered by the district court . . . would expand the doctrine of the law of the case far beyond its roots in the values of 'efficiency, finality, and obedience within the judicial system.'" *Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1581 n. 9 (11th Cir. 1991) (quoting *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987)). This Honorable Court and the Eleventh Circuit Court of Appeals know very well there is a judicial hierarchy in which courts on different levels are delegated different duties. *See generally* 28 U.S.C.A. §2106. Trial courts are tasked as gatekeepers to ensure that unviable claims do not haunt our judicial system, which streamlines litigation and avoids needless discovery and fact-finding.[3] *See generally Neitzke*, 490 U.S. at 326-27. Conversely, appellate courts are to review the trial court's decisions to ensure that the law is properly applied in the cases, but are generally not tasked with overseeing the discovery process or fact-finding. This is why the appellate courts ordinarily do not enter final judgments. *See generally* 28 U.S.C.A. §2106. This is also why appellate courts like the Eleventh Circuit preside over several states, whereas multiple district courts are located

---

[3] Therefore, if a case as a matter of law "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon*, 467 U.S. at 73, "a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327.

Case 12-03033    Doc 49    Filed 02/13/15    Entered 02/13/15 17:46:14    Desc Main
                    Document       Page 20 of 24

within each state. Therefore, in *Crawford*, if the court of appeals engaged in fact-finding and determined issues not presented to it, it would not be acting efficiently and would be improperly blurring the lines distorting the appellate process. That is why the court of appeals did not do so, and instead remanded the entirety of this case for further proceedings.

**C. Even if this Honorable Court believes the *Crawford* opinion contains expressed and implied holdings beyond the issue on appeal, this Court is not barred from reconsidering an issue under three exceptions.**

If Crawford were right and the appellate court ruled on the merits of the case, ignoring both the issue on appeal and the rules of procedure, there are still three exceptions to the law of the case doctrine allowing this Honorable Court to reconsider those matters. Specifically:

> the law of the case doctrine does not apply to bar reconsideration of an issue when (1) subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*U.S. v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982). Moreover, "[w]hile the introduction of new evidence may create a set of issues that were left unaddressed by the earlier appellate ruling, this evidence must present the trial court with substantially different circumstances than those the appellate court confronted before reconsideration of the decision is proper." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). Because this matter was before the court of appeals at the 12(b)(6) stage, no discovery has been conducted. Neither party has had the opportunity to produce information that would prove or dispute the allegations in the complaint. Neither party has had the chance to brief legal issues regarding the purpose and goal of bankruptcy, its overlap with the FDCPA, and the unique reasons why a debtor inviting creditors to make a proof of claim is not later entitled to pretend he was fooled or misled by those accepting that invitation.

As such, undoubtedly on remand, this Honorable Court will have "substantially different evidence" before it to determine the ultimate merit of this case. Thus, this Court may reconsider an issue even if addressed by the appellate court. *See U.S. v. Robinson*, 690 F.2d at 872 – 73 (holding "law of the case doctrine did not preclude review by the Eleventh Circuit of prior panel's conclusion that defendant voluntarily consented to accompany Drug Enforcement Administration agent to airport office, since the subsequent trial produced substantially different evidence"); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d at 1283-86 (noting that the appellate court's decision to reverse the lower court's grant of summary judgment for the board of education on the teacher's retaliation claim under Title VII did not produce a mandate that prohibited the district court from granting summary judgment to the board of education on remand when new evidence of board member's testimony was presented). In the present case, on remand new evidence and considerations will be presented because, on appeal, the only substantive information about the facts in this case came from Plaintiff's complaint. There is more to this story than just what Plaintiff pled.

Additionally, the *Crawford* opinion is clearly erroneous and would work a manifest injustice. *See generally Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1370–71 (11th Cir. 2003) (explaining the clearly erroneous standard is met when "the legal error is beyond the scope of reasonable debate"); *Moulds v. Bullard*, 452 F. App'x 851, 853 (11th Cir. 2011) (applying the exception to the mandate rule finding a manifest injustice and reversible error). In *Crawford,* the court of appeals misapplied the burden of proof, misapplied the standard of review, created a conflict between two statutes, and actually created more confusion and litigation in an otherwise seamless bankruptcy claims administration process. Nowhere is this more evident than the panel's incorrect reasoning regarding the impact an out-of-statute proof of claim has on the

debtor. The panel notes such 'stale' claims would "be paid from the debtor's future wages as part of his Chapter 13 repayment plan" as evidence of some harm or wrong worked upon the debtor. *Crawford*, *supra*, at 1261. But the panel did not understand that, per Chapter 13, the debtor's payments remain the same regardless of the number of claims allowed. It is irrelevant to the debtor – the alleged victim in this scenario – how many creditors divide the set amount of money he must pay. This, and other, mistakes in the reasoning of the panel render the *Crawford* opinion legally unsound and this Honorable Court need not adopt rules that are plainly wrong.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully submit this Honorable Court is empowered, and actually obligated, to hear the merits of this case and consider all defenses not addressed by the Eleventh Circuit Court of Appeals. By remanding this case for further proceedings, the court of appeals followed binding precedent limiting its power on review, allowed the plaintiff all favorable inferences, and sent the case back for adjudication on the genuine merits. All parties are still entitled to file for Judgment on the Pleadings, Summary Judgment, and /or take the case to trial if legally warranted. The Defendants ask, if the *Petition for Writ of Certiorari* is not granted that the discovery be allowed, the parties brief all controlling legal issues (including the statute of limitations), and the merits of this case decide its determination.

Respectfully Submitted,


/s/ Neal D. Moore, III
Neal D. Moore, III
Tina Lam
*Attorneys for LVNV Funding, LLC, Resurgent Capital Services, LP, & PRA Receivables Management, LLC*

**OF COUNSEL:**

FERGUSON, FROST, MOORE & YOUNG, LLP
Post Office Box 430189
Birmingham, Alabama  35243-0189
Tel: (205) 879-8722
Fax: (205) 879-8831
Email: ndm@ffmylaw.com
        lam@ffmylaw.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this the 13th day of February, 2015, a copy of the foregoing document has been served upon counsel for all parties to this proceeding via electronic filing:

Nicholas H. Wooten
Wooten, Hood & Lay
PO Box 3389
Auburn, AL 36813
*Attorney for Plaintiff*

/s/ Neal D. Moore, III
OF COUNSEL

{W0411888.1 }